## A06A2263. FORD v. THE STATE.
### (641 SE2d 671)

PHIPPS, Judge.

Sylvester Ford appeals his convictions for committing aggravated stalking upon his wife, aggravated assault upon his wife's friend, and possessing a firearm during the commission of a felony. He challenges the sufficiency of the evidence supporting the aggravated stalking charge and contends that the trial court erred in admitting in evidence a temporary protective order and in rejecting his claim of ineffective assistance of counsel. Because he has demonstrated no error, we affirm.

The evidence showed that at about 9:00 a.m. on August 21, 2003, Ford's wife was walking in a park with a male friend. Ford appeared out of a gully, approached the two, and then pointed a gun at the friend. Ford's wife screamed Ford's name repeatedly, rushed to him, and began struggling with him. The gun remained pointed at her friend, however, and was fired, missing the man, who ran away.

1. Challenging the sufficiency of the evidence to support his conviction for committing aggravated stalking upon his wife, Ford argues that there was no evidence that his contact with her at the park that day was without her consent and for the purpose of harassing and intimidating her.

OCGA § 16-5-91 (a) provides:

A person commits the offense of aggravated stalking when such person, in violation of a ... temporary restraining order, temporary protective order, permanent restraining order, [or] permanent protective order ... in effect prohibiting the behavior described in this subsection, follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person.[1]

The state showed that on three earlier occasions, Ford appeared unexpectedly when his wife was with the same friend. On the first occasion, Ford stopped his wife and the man as the two were riding

---

[1] See *Kennedy v. State*, 279 Ga. App. 415, 416 (1) (631 SE2d 462) (2006).

together in a car. He approached them and asked her who was accompanying her. She told him that the man was a client. On the second occasion, Ford approached his wife and her friend as the two were walking in the park. He asked the man, "Who the hell are you?" Because the man "didn't know what [Ford] was going to do," he gave Ford a fictitious name and then walked away, hearing behind him Ford and his wife arguing. On the third occasion, Ford drove into the driveway of the home where he and his wife were living. The wife was there with her friend, who saw Ford and therefore left through a basement door before Ford got out of his car.

About a month before the incident underlying this case, Ford's wife obtained a six-month, temporary protective order against Ford. Pertinently, it stated that "[Ford] is restrained and enjoined from approaching within 100 yards of [his wife] and/or the minor children of [Ford's wife], except during exercise of visitation." It allowed Ford's wife to "visit with [Ford] if she chooses and if mutually agreeable."

Here, evidence of Ford's wife screaming when she saw him suddenly appear, their physical struggle, and her "hysterical" condition when the police arrived at the scene moments later, authorized the jury to find beyond a reasonable doubt that Ford's contact with her that day was without her consent, choosing or agreement. Evidence that Ford suddenly appeared in a public place and pointed a gun at his wife's companion, toward whom he had expressed hostility in the past, was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Ford's purpose was to harass and intimidate his wife. Ford does not argue, nor was there any evidence, that his approach within 100 yards of his wife was to exercise visitation with his wife's children. Thus, Ford's challenge to the sufficiency of the evidence is without merit.[2]

2. Ford contends that the trial court erred by admitting the temporary protective order, asserting that it contained allegations by his wife, who elected not to testify. He argues that such allegations therefore constituted hearsay, the admission of which violated his right to confront a witness against him.

Rejecting this argument below, the trial court noted particularly that the order itself stated, "in lieu of a finding by the court that an act of family violence was committed by [Ford] and/or [Ford's wife], [Ford] and [Ford's wife] have consented that this Protective Order should be entered by the court, without specifically admitting to the commission of an act of family violence by either party." On appeal, Ford cites no specific allegation made by his wife contained in the

---

[2] See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Revere v. State*, 277 Ga. App. 393, 394 (1) (a) (626 SE2d 585) (2006).

order. Consequently, he has failed to show that the trial court abused its discretion in admitting the order in its entirety.

3. Ford contends that the trial court erred by rejecting his claim that he received ineffective assistance of counsel.

To prevail on such claim, a defendant must establish, pursuant to *Strickland v. Washington*,[3] that counsel's performance was deficient and that the deficient performance was prejudicial to his defense.[4] A court addressing the ineffective assistance issue is not required to approach the inquiry in any particular order or even to address both components if the defendant has made an insufficient showing on one.[5] Both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact.[6] In reviewing a trial court's determination regarding a claim of ineffective assistance of counsel, this court upholds the trial court's factual findings unless they are clearly erroneous; we review a trial court's legal conclusions de novo.[7]

(a) Ford argues that his trial counsel was ineffective because he did not move to bifurcate the trial so that the jury would not hear evidence of the temporary protective order during his trial for aggravated assault. The evidence against Ford on the aggravated assault charge included the testimony of Ford's wife's friend and the testimony of others who were in the area when Ford pointed and fired the gun at the man. The evidence further showed that when Ford was apprehended by the police shortly after the shooting, an officer retrieved from Ford's pocket a gun with four live rounds and two spent ones. Given the overwhelming evidence against Ford with respect to the charge of aggravated assault, there is no reasonable probability that the outcome of his trial with respect to that charge would have been different had the jury not been presented evidence of the temporary protective order.

(b) Ford argues that his trial counsel was ineffective because he did not stipulate to the fact that the temporary protective order was in effect at the time of the incident. He claims that the order itself contained irrelevant and inflammatory information, such as the identity of the children, a visitation schedule for the children, his income, provisions for dividing property, and his consent to the order. We find no merit in this argument. Given the overwhelming evidence against Ford, however, the information he cites was not of such character as to have given rise to any reasonable probability that the

---

[3] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[4] See *Conaway v. State*, 277 Ga. 422, 424 (2) (589 SE2d 108) (2003).

[5] *Lajara v. State*, 263 Ga. 438, 440 (3) (435 SE2d 600) (1993).

[6] Id.

[7] *Suggs v. State*, 272 Ga. 85, 87-88 (4) (526 SE2d 347) (2000).

outcome of his trial would have been different had trial counsel stipulated to the existence of the temporary protective order to avoid its presentment to the jury.

*Judgment affirmed. Smith, P. J., and Ruffin, J., concur.*

DECIDED FEBRUARY 6, 2007.

*Wystan B. Getz*, for appellant.

*Daniel J. Porter, District Attorney, Nancy J. Dupree, Assistant District Attorney*, for appellee.